IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

NORMAN SMITH
on behalf of the Estate of
Antonio J. Smith,

    Plaintiff,

vs.                                      No. 20-2086-JTF-dkv

City of Memphis in his
individual capacity and official
capacity; Memphis Police Department
in his individual capacity and
official capacity; and
Director Michael Rallings,
substituting for both John Does in
their official capacity and
individual capacity,

    Defendants.
_____

ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT OR IN THE
ALTERNATIVE FOR APPOINTMENT OF COUNSEL
and
REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
_____

On February 5, 2020, the plaintiff, Norman Smith ("Smith"), filed a *pro se* complaint on behalf of the estate of Antonio J. Smith[1] ("Antonio Smith") alleging violations of civil rights under 42 U.S.C. § 1983 against the City of Memphis (the "City), the Memphis Police Department (the "MPD"), and Michael Rallings

---

[1] It appears from the complaint that Antonio Smith was the brother of Norman Smith.

("Rallings"),[2] the Director of Police Services for the MPD, (collectively "the Defendants.") (Compl., ECF No. 1.) Before the court is the City's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed on February 27, 2020. (Mot. to Dismiss, ECF No. 17.)

Also before the court is Smith's motion for leave to amend his complaint or, in the alternative, for appointment of counsel filed on February 28, 2020. (Pl.'s Mot., ECF No. 18.) On March 6, 2020, the Defendants filed a response in opposition to Smith's motion. (Defs.' Resp., ECF No. 20.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

For the following reasons, the motion for leave to amend is denied as moot, the alternative motion for appointment of counsel is denied, and it is recommended that the City's motion to dismiss be granted.

## I.   PROPOSED FINDINGS OF FACT

Smith brings this action on behalf of "the estate of Antonio J. Smith", pursuant to 18 U.S.C. § 1983 for "excessive force, wrong death, false arrest, and illegal detainment." (Compl. 1-3, ECF

---

[2] In his complaint, Smith incorrectly identifies Rallings as Michael Rilling.

2

No. 1.) Smith alleges in his original complaint that several police officers were called to investigate a call made by a Kayla Davis ("Ms. Davis") concerning a break-in at her residence located at 3642 Hallbrook Street Memphis, Tennessee 38127. (*Id.* at 2.) According to the complaint, the officers were speaking with Ms. Davis when they heard a "commotion outside." (*Id.*) Upon going outside to investigate, Smith states that the officers encountered Antonio Smith and Trey Higgs ("Higgs"). (*Id.*) Smith states that Higgs "has a problem going over [to] people's houses and stealing" while Antonio Smith "ha[d] a problem" with Higgs coming over, that Antonio Smith asked Higgs to leave, and that a physical altercation ensued. (*Id.*)

Smith further alleges that according to a written statement made by Ms. Davis, Antonio Smith kept his hands in the air, informing officers "not to shoot," but that Antonio Smith was shot three times "without any legal reasoning to justify [the officers'] actions." (*Id.*) Smith claims that officers John Doe 1 and John Doe 2 knowingly and intentionally acted "without legal justification and use[d] more than a [d]e minimus use of force to maintain control." (*Id.*) Smith states that Antonio Smith was not committing a crime and was on his own property "protect[ing] his liberty interest and his famil[y's] interest." (*Id.*)

In the original complaint, Smith asserts that the MPD is responsible for the conduct of its officers, that he is bringing

3

his claim pursuant to *Monell v. New York Social Service*, 436 U.S. 658 (1978), and that the MPD has a "pattern and practice of shooting citizens." (*Id.*) According to Smith, the officers are "covering up [their] wrongdoing" and that it is "clear [] [Antonio Smith's] civil rights were violated, and the police used excessive force." (*Id.* at 3.)

For relief, Smith seeks $6 million in compensatory damages, $6 million in punitive damages, injunctive relief against the MPD to bring its "training up to constitutional standards," for the officers to be federally prosecuted, and any other relief the court deems just and fair. (*Id.*)

Smith filed an amended complaint on March 20, 2020. (Am. Compl., ECF No. 22.) In the amended complaint, Smith alleges that the events above took place on December 26, 2019. (*Id.* ¶ 2.) Additionally, Smith includes a more detailed description of the incident, stating that the officers began making commands for both parties, presumably Antonio Smith and Higgs, to "break away from each other." (*Id.* ¶ 3.) Smith reiterates that, according to Ms. Davis, both parties' hands were visible and there were no lethal weapons. (*Id.*) At all times, Antonio Smith's hands were in the air. (*Id.*)

Smith makes other various allegations in his amended complaint including: (1) that the officers had body cameras which will show that Antonio Smith was not a threat; (2) that the MPD

4

has training policies that instruct an officer on how to handle situations, but that the officers used excessive force; (3) that the MPD has "policies, procedures, rules and regulations" that violate civil rights and that the TBI investigation guidelines "cover up the misconduct;" (4) that the MPD's procedures and policies are unconstitutional because "it trains the police to kill first without asking questions or doing proper investigation;" (5) that the City has a policy which allows for police to harass the citizens of Memphis without probable cause; and (6) the City has a "strict policy" to remain silent as to the misconduct of its officers; (*Id.* ¶¶ 5-7, 11-12.) Lastly, Smith contends that the officers discriminated against Antonio Smith because he had a mental illness which the officers "had full knowledge" of. (*Id.* ¶ 22.)

Attached to his amended complaint is a document titled "Power of Attorney." (Power of Att'y, ECF No. 22-1.) It is signed by an Alicia Towles ("Towles") and dated March 20, 2020. (*Id.*) The document purports to give Smith the power to sue on behalf of Towles's and Antonio Smith's two children. (*Id.*)

II. PROPOSED CONCLUSIONS OF LAW

A.   Smith's Motion for Appointment of Counsel

Smith seeks appointment of counsel in his complaint, (Compl. 3, ECF No. 1), and, in addition, he filed a motion for leave to amend his complaint or, in the alternative, for appointment of

5

counsel, (Pl.'s Mot., ECF No. 18). Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." Similarly, under 42 U.S.C. § 2000e-5(f)(1), "upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002)("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit.") Appointment of counsel is "'a privilege that is justified only by exceptional circumstances.'" *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993)(quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)).

> In determining whether "exceptional circumstances" exist, courts have examined "the type of case and the abilities of the plaintiff to represent himself." *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987); *see also Poindexter v. FBI*, 737 F.2d 1173, 1185 (D.C. Cir. 1984). This generally involves a determination of the "complexity of the factual and legal issues involved." *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986).

*Id.* at 606. Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when her chances of success are extremely slim. *Lavado*, 992 F.2d at 606 (citing *Mars v. Hanberry*, 752 F.2d 254, 246 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009)(same).

6

Nothing in Smith's complaint distinguishes him from other cases filed by *pro se* litigants and Smith has demonstrated an ability to represent himself. Furthermore, because it is recommended herein that Smith's complaint be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and for lack of standing, Smith's chances of success are extremely slim. Thus, Smith has not satisfied his burden of demonstrating that appointment of counsel would be appropriate in this case.

Accordingly, Smith's request for appointment of counsel is denied.

B. <u>Smith's Motion to Amend His Complaint</u>

On February 28, 2020, Smith moved to amend his complaint. (Pl.'s Mot., ECF No. 18.) The Defendants filed a response in opposition to the motion to amend, arguing that Smith lacks standing, and that Smith's motion does not state with particularity the grounds for seeking an amendment required by Rule 7(b)(1) of the Federal Rules of Civil Procedure. (Defs.' Resp., ECF No. 19.)

Motions to amend a complaint are governed by Rule 15 of the Federal Rules of Civil Procedure, which provides in relevant part that "a party may amend its pleading only with the opposing party's written consent or the court's leave" unless it is filed within a certain time period. Fed. R. Civ. P. 15(a)(2). "A party may amend its pleading once as a matter of course within" either twenty-one days after serving it or, "if the pleading is one to which a

7

responsive pleading is required" twenty-one days after service of the responsive pleading. Fed. R. Civ. P. 15(a)(1). Smith's complaint was served on February 6, 2020, the City filed its motion to dismiss on February 26, 2020 and served Smith with its motion to dismiss by U.S. Mail. Smith sought leave to amend his complaint on February 28, 2020, although leave to file an amended complaint was unnecessary at that time, and Smith filed his amended complaint on March 20, 2020. Assuming Smith was served with the motion to dismiss on March 1, 2020, which accounts for an additional three days by mail, Smith timely amended his complaint as a matter of course within 21 days of the City's service of its motion to dismiss. Considering Smith's *pro se* status, the court will consider the amended complaint properly and timely filed.

Accordingly, Smith's motion to amend his complaint is denied as moot because he was entitled to amend his complaint as a matter of course, and the court will consider the allegations in the amended complaint in ruling on the motion to dismiss.

C. City's Motion to Dismiss

In its motion to dismiss, the City makes three general arguments: (1) Smith lacks standing to sue on behalf of Antonio Smith, (2) the claims against the City must be dismissed for failure to state a claim, and (3) Smith is not entitled to punitive damages against the City.

1. *Legal Standard*

8

To survive a Rule 12(b)(6) dismissal following the United States Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must "'contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption to truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3. ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to 'less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th

9

Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading." (internal quotation marks omitted)); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

    2. *Standing*

In arguing that Smith lacks standing, the City states "after inquiring with the Clerk of the Probate Court of Shelby County,

Tennessee, no estate exists for an individual named Antonio J. Brown." Presumably, this is a typo and the City inquired about an estate of Antonio J. Smith. A court may generally only consider the pleadings in deciding a Rule 12(b) motion to dismiss, requiring the court to convert the motion into a summary judgment motion under Rule 56 if it considers matters outside of the pleading. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001). While the court may consider public records and facts susceptible to judicial notice without converting a motion to dismiss, see *Russell v. Tribley*, 2011 WL 4387589, at *3 (E.D. Mich. Aug. 10, 2011)(citation omitted), the City failed to attach any documentation supporting its assertion. The court agrees, however, that Smith lacks standing to bring this claim in federal court.

Smith attaches a power of attorney to his amended complaint in which he says that the mother of Antonio Smith's children said Smith may sue on their behalf. (Power of Att'y, ECF No. 22-1.) The power of attorney is not notarized. Lack of standing implicates the case-or-controversy requirement of Article III, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and, therefore, is a threshold issue in every federal case. *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469-70 (6th Cir. 2007).

Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "[i]n all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Id.* (emphasis added). The federal courts have long held that § 1654 preserves a party's right to proceed *pro se*, but only on his own claims. Only a licensed attorney may represent other persons. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969); *accord Shepherd v. Wellman*, 313 F.3d 963, 970-71 (6th Cir. 2003)(*pro se* party may not prosecute a wrongful death action on behalf of other beneficiaries). No *pro se* plaintiff may sign pleadings on behalf of another. *Johns v. Cty. Of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)("While a non-attorney may appear *pro se* on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'"); Mikeska v. Collins, 928 F.2d 126 (5th Cir. 1991); Bonacci v. Kindt, 868 F.2d 1442, 1443 (5th Cir. 1989). "Similarly, parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Shepherd*, 313 F.3d at 970; *see Cochran v. Nelson*, 1994 WL 28648, at *3 (6th Cir. Feb. 1,

1994)("Because Virgil Cochran is not an attorney, he may not represent his son in federal court.").

The Sixth Circuit considers this issue one of lack of standing. *Oliver v. Pogats*, 1992 WL 76951, at *1 (6th Cir. Apr. 13, 1992). Smith, as a *pro se* plaintiff, may not represent the estate of Antonio Smith or Antonio Smith's children. Accordingly, Smith lacks standing to file this lawsuit *pro se*, and it is therefore recommended that Smith's claims against the City be dismissed.

3.  *Failure to State a Claim Under § 1983*

In his complaint and amended complaint, Smith alleges that two unidentified police officers witnessed and subsequently intervened in a physical altercation between Antonio Smith and Higgs. (Compl., ECF No. 1; Am. Compl., ECF No. 22.) Smith brings his claim pursuant to § 1983 for "excessive force, wrong death, false arrest, and illegal detainment." (*Id.*) At some point, an officer shot Antonio Smith. (*Id.*) Smith has named Rallings, the Director of Police Services for the MPD; the MPD; and the City as defendants in his suit. (*Id.*)

The City argues that all claims against it should be dismissed because it is not vicariously liable for the actions of the individual officers and that even under the *Monell* theory of liability for municipalities, Smith has failed to state a claim. (Mot. to Dismiss 5-7, ECF No. 17.) In *Monell*, the Supreme Court

13

held that (1) municipal liability must be predicted upon the existence of some policy, procedure, or custom resulting in constitutional harm to the plaintiff, and (2) a "municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 690-91; *see also, Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."). Accordingly, Smith cannot rely on his assertion that the City is vicariously liable for the actions of the MPD officers.

A governmental entity is liable under § 1983 if an "officially executed policy, or the toleration of a custom within [it] leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996)(citing *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994)(quoting *Polk Co. v. Dodson*, 454 U.S. 312, 326 (1981)(citation omitted)). Accordingly, for Smith "to demonstrate municipal liability, he must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his

14

injury was caused by execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *see also, Searcy*, 38 F.3d at 286 (noting that such policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983")(quoting *Polk Co.*, 454 U.S. at 326).

Smith fails to sufficiently identify a municipal policy or custom. "A local government may be found liable for policies set by lawmakers 'or by those whose edicts or acts may fairly be said to represent official policy.'" *Davenport v. Simmons*, 192 F. Supp. 2d 812, 824 (W.D. Tenn. 2001)(citing *Monell*, 436 U.S. at 694). Additionally, "a 'custom' for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe*, 103 F.3d at 507-08. "A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim. Conclusory allegations will not lie." *Davenport*, 192 F. Supp. 2d at 824 (citing *Culberson v. Doan*, 125 F. Supp. 2d 252, 263-64 (S.D. Ohio 2000)). Smith's allegations that the City has a policy or custom of excessive force are conclusory. These alone are insufficient. *See Thomas v. City of Chattanooga*, , 432-33 (6th Cir. 2005)(finding that, without more, an officer's use of excessive force in that particular instance was not enough to show a policy or custom); *Garner v. City of Memphis*, 576 F. App'x 460, 461-62 (6th Cir. 2014)(finding that the

15

plaintiff failed to state a claim and failed to identify a custom or policy where he alleged generally that the MPD arrested him without probable cause). Without sufficiently pointing to a custom or policy driving the allegedly unconstitutional action, Smith fails to state a claim. Accordingly, it is recommended that all claims against the City be dismissed.

As to Rallings, Smith asserts he is suing Rallings as a "substituting party for Officer John Doe 1 and Officer John Doe 2 in their official and individual capacities." (*Id.*) Rallings is the Director of Police Services for the MPD and Smith purports to sue him in lieu of the two officers in their official and individual capacities. The City argues that Smith has made no factual allegations of any direct action by Rallings. (Mem. in Supp. of Mot. 7, ECF No. 17-1.) Claims against the MPD and claims against Rallings in his official capacity, are equivalent to suits against the City. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)(citations omitted)(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

Individual capacity suits, in contrast, seek to impose personal liability upon a government official for actions taken under color of state law, where the plaintiff recovers only against the government official's personal assets. *Id.* Official and

16

individual capacity liability under § 1983 should be carefully distinguished. Claims against government officials in their official capacities are tantamount to a suit against the governmental entity. *Id.* at 166 (citation omitted). As stated above, Smith has failed to state a claim against the City and therefore the claims against Rallings in his official capacity should be dismissed.

In regard to individual liability, to be liable in an individual capacity under § 1983, there must be a showing that the employee encouraged the specific incident of misconduct or in some way directly participated in it. "At a minimum, a § 1983 plaintiff must show that the supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Smith's complaint contains no factual allegations against Rallings. Smith does not allege that Rallings encouraged the alleged shooting of Antonio Smith or that he implicitly authorized, approved, or knowingly acquiesced in the alleged shooting of Antonio Smith. As such, it is recommended that any claims against Rallings in his individual capacity should be dismissed for failure to state a claim.

As to the MPD, Smith alleges that the MPD failed to properly train their officers in interacting with civilians and that the

17

MPD has a pattern and practice of shooting citizens. (Compl. 2, ECF No. 1.) It is well-established in the Sixth Circuit that a police department is not a proper defendant in a § 1983 action. *See Mathews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)("[T]he Police Department is not an entity which may be sued."). Police departments can properly be characterized as "sub-units of the municipalities they serve." *Sargent v. City of Toledo Police Dep't*, 150 F. App'x 470, 475 (6th Cir. 2005). "[S]ince *Mathews*, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." *Mathes v. Metro Gov't of Nashville & Davidson Cty.*, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010). The MPD is a sub-unit of the City, and therefore, the MPD is not a separate legal entity which may be sued under § 1983. Accordingly, it is recommended that any claims against the MPD be construed as claims against the City. As stated above, Smith fails to state a claim against the City, and therefore it is recommended Smith's claims be dismissed.

    4. *Punitive Damages against the City*

Because the court finds that Smith lacks standing and fails to state a claim against the City pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it is not necessary for the court to address the City's arguments concerning punitive damages.

III. RECOMMENDATION AND ORDER

For the foregoing reasons, the motion for leave to amend is denied as moot, the alternative motion for appointment of counsel is denied, and it is recommended that the City's motion to dismiss be granted and this case either be dismissed without prejudice for lack of standing or dismissed with prejudice for failure to state a claim.

Respectfully submitted this 2nd day of April 2020.

                         s/Diane K. Vescovo
                         DIANE K. VESCOVO
                         CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.